

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

June 9, 1939

Mr. John I. Taylor,
Chief Supervisor, Oil and Gas Division,
Railroad Commission of Texas,
Austin, Texas.

Dear Sir:

Opinion No. O-390
In re: The power of the Railroad
Commission to make necessary orders
requiring the killing of an uncon-
trolled gas well, and the remedies
for enforcing such orders.

We acknowledge receipt of your request, dated May 23,
1939, for an opinion from this department as to the power of
the Railroad Commission of Texas to make necessary orders
requiring the killing of an uncontrolled or wild gas well,
and the remedies for enforcing such orders. Your request
states the facts and the questions to which you desire answers,
as follows:

"In the month of November, 1938, while in the process of
being drilled, a well blew out and caused a large crater
to surround same. This well has never been killed or
brought under control. On the contrary, the well or
crater, since the blowout, has produced into the air
millions of cubic feet of gas, thus dissipating the sands
from which the gas is being produced and thereby admittedly
causing physical waste.

"After due notice and Hearing, the Commission has concluded
from the evidence introduced that the feasible and practi-
cable way to kill the well in question and thereby conserve
natural resources would be; First, to cause a number of
directional wells to be drilled into the sand from which
the gas is being produced and pump water into this sand
through these wells; and, Second, cause a number of wells
to be drilled into the upper water sands. By this process
the water pumped through the wells drilled into the produc-
ing section would kill the gas flow, while the sands which
have become charged would be relieved of the accumulated gas.

"1. Does the Railroad Commission of Texas have the power, after due notice and Hearing, to enter an Order requiring the person who drilled the well or the present owner thereof to drill the additional wells hereinbefore referred to as a means of conserving natural resources?

"2. Should it be held that the Commission has the power to enter the order inquired about, and should the Commission so act, then in the event the person drilling the well or the present owner thereof fails and refuses to comply with the provisions of the Order, what action, if any, could the Commission take in the premises?

"In this connection it might not be amiss to advise you that the estimated cost of this project is $190,000, and, further, that the well and the lease upon which same is located is owned by a solvent corporation owning other producing properties. These facts would become material only in the event it is thought that the property of the corporation could be placed in receivership in order to use the revenue from same to finance the drilling of the additional wells hereinbefore mentioned."

Our answer to your first question is that, in our opinion, the Railroad Commission of Texas has the power, after due notice and hearing, to enter an order requiring the present operator of an uncontrolled gas well to drill such additional wells as may be necessary to kill the uncontrolled well and prevent any further injury to surrounding property from cratering or otherwise, resulting from the blowout.

In this connection, we wish to state that it is our information that the pumping of water into the wild well will not prevent the subsequent recovery of gas from the gas sand, but that it will merely make it possible to place the wild well under control. It is also our understanding that the directional wells may possibly be converted into producing wells after the wild well has been killed. We further understand that the purpose of drilling the wells into the upper water sands is to relieve these sands of gas which has been forced into them by the blowout and the uncontrolled flow of gas from the wild well, and thereby to prevent cratering and other dangers to surrounding property.

Allowing gas to escape into the air through an uncontrolled well is waste, as the term "waste" is defined in the statutes. Section 3 of Article 6008 of the Revised Civil Statutes provides in part as follows:

Mr. John I. Taylor, June 9, 1939, Page 3.

"Sec. 3. The production, transportation, or use of natural gas in such manner, in such amount, or under such conditions as to constitute waste is hereby declared to be unlawful and is prohibited. The term 'waste' among other things shall specifically include:

* * *

"(f) Physical waste or loss incident to, or resulting from, so drilling, equipping, or operating well or wells as to reduce or tend to reduce the ultimate recovery of natural gas from any pool.

* * *

"(k) Permitting any natural gas produced from a gas well to escape into the air before or after such gas has been processed for its gasoline content."

Section 7 of Article 6008 provides in part as follows:

"Sec. 7. After the expiration of ten (10) days from the time of encountering gas in a gas well, no gas from such well shall be permitted to escape into the air, and all gas produced therefrom shall be utilized for the following purposes:

"(1)    No sweet gas shall be utilized except for:
"(a)    Light or fuel.
"(b)    Efficient chemical manufacturing, other than the manufacture of carbon black.
"(c)    Bona fide introduction of gas into oil, or gas bearing horizon, in order to maintain or increase the rock pressure ot otherwise increase the ultimate recovery of oil or gas from such horizon.
"(d)    The extraction of natural gasoline therefrom when the residue is returned to the horizon from which it is produced."

Article 6014 of the Revised Civil Statutes provides in part as follows:

"Art. 6014.   'Waste'

"The production, storage or transportation of crude petroleum oil or of natural gas in such manner, in such amount, or under such conditions as to constitute waste is hereby declared to be unlawful and is prohibited. The term 'waste' among other things shall specifically include:

* * *

"(f) Physical waste or loss incident to, or resulting from, so drilling, equipping, locating, spacing or operating well or wells as to reduce or tend to reduce the total ultimate recovery of crude petroleum oil or natural gas from any pool.

"(g) Waste or loss incident to, or resulting from, the unnecessary, inefficient, excessive or improper use of the reservoir energy, including the gas energy or water drive, in any well or pool; * * *

" The Commission may consider any or all of the above definitions, whenever the facts, circumstances or conditions make them applicable, in making rules, regulations or orders to prevent waste of oil or gas."

Article 6015 of the Revised Civil Statutes provides as follows:

"Art. 6015. Prevention of waste

"All operators, contractors, or drillers, pipe line companies, or gas distributing companies, drilling for or producing crude oil or natural gas or piping oil or gas for any purpose shall use every possible precaution in accordance with the most approved methods to stop and prevent waste of oil and gas or both, in drilling and producing operations, storage or in piping or distributing, and shall not wastefully utilize oil or gas, or allow same to leak or escape from natural reservoirs, wells, tanks, containers or pipes."

Article 6016 of the Revised Civil Statutes provides as follows:

"Art. 6016. Confining gas in wells

"Whenever natural gas in such quantities, in a gas bearing stratum known to contain natural gas in such quantities, is encountered in any well drilled for oil or gas in this State, such gas shall be confined to its original stratum until such time as the same can be produced and utilized without waste and all such strata shall be adequately protected from infiltrating waters."

The statutes give the Railroad Commission the authority to adopt necessary orders and regulations to prevent waste of natural gas. Article 6008, Section 6, of the Revised Civil Statutes provides in part as follows:

"Sec. 6. The Commission shall make and enforce rules, regulations, or orders for the conservation of natural gas, to prevent the waste thereof, and otherwise to accomplish the purposes of this Article, including rules, regulations, or orders for the following purposes:

Mr. John E. Taylor, June 9, 1939, Page 5.

"(1)  To prevent the waste, as hereinbefore defined, of natural gas in drilling and producing operations and in the piping and distribution thereof.

"(2)  To require dry or abandoned wells to be plugged in such way as to confine natural gas, and water in the strata in which they are found and to prevent them from escaping into other strata.

 * * *

"(4)  To require wells to be drilled and operated in such manner as to prevent injury to adjoining property.

"(5)  To prevent natural gas and water from escaping from the strata in which they are found into other strata."

Section 22 of Article 6008 of the Revised Civil Statutes provides as follows:

"Sec. 22.  The Commission shall be vested with a broad discretion in administering this law, and to that end shall be authorized to adopt any and all rules, regulations or orders which it finds are necessary to effectuate the provisions and purposes of said law."

Article 6029 of the Revised Civil Statutes provides in part as follows:

"Art. 6029.  Rules and regulations

"The Commission shall make and enforce rules, regulations or orders for the conservation of crude petroleum oil and natural gas and to prevent the waste thereof, including rules, regulations or orders for the following purposes:

"(1)  To prevent the waste, as hereinbefore defined, of crude petroleum oil and natural gas in drilling and producing operations and in the storage, piping and distribution thereof.

"(2)  To require dry or abandoned wells to be plugged in such way as to confine crude petroleum oil, natural gas, and water in the strata in which they are found and to prevent them from escaping into other strata.

 * * *

"(4)  To require wells to be drilled and operated in such manner as to prevent injury to adjoining property.

"(5)  To prevent crude petroleum oil and natural gas and water from escaping from the strata in which they are found into other strata.

 * * *

Mr. John I. Taylor, June 9, 1939, Page 6.

"(8) It shall do all things necessary for the conservation of crude petroleum oil and natural gas and to prevent the waste thereof, and shall make and enforce such rules, regulations or orders as may be necessary to that end."

Section 7 of Article 6049c provides in part as follows:

"Sec. 7. Upon the initiative of the Commission, or upon the verified complaint of any person interested in the subject matter, that waste of crude petroleum oil or natural gas is taking place in this State, or is reasonably imminent, the Commission may hold a hearing, at such time and place as it may fix, to determine whether or not waste is taking place, or is reasonably imminent and what, if any, rule, regulation, or order should be made or what, if any, other action should be taken to correct, prevent or lessen such waste. At said hearing all parties interested shall be entitled to be heard and introduce evidence and to require the attendance of witnesses, and the production of evidence may be required as provided by law. If upon the hearing the Commission shall find that waste is taking place, or is reasonably imminent, the Commission shall make such rule, regulation or order as in its judgment is reasonably required to correct, prevent or lessen such waste.
* * *

"From and after the promulgation of any rule, regulation or order of the Commission it shall be the duty of each person affected thereby to comply with the same."

Under the facts, as we understand them, the introduction of water into the wild well will not drown the gas stratum or cause a reduction in the amount of natural gas which may be recovered from the stratum. It follows, therefore, that the contemplated procedure would not be in violation of Article 6008, Section 3 (b) or Article 6014 (b) of the Revised Civil Statutes, which respectively define waste as follows:

Article 6008, Section 3 (b): "The drowning with water of any stratum or part thereof capable of producing gas in paying quantities."

Article 6014 (b): "The drowning with water of any stratum or part thereof capable of producing oil or gas, or both oil and gas, in paying quantities."

In our opinion, the above statutes clearly define waste so as to include allowing gas to escape from an uncontrolled or wild well in the manner described in your letter, and it seems equally clear that the Railroad Commission, after proper notice and hearing, can adopt proper rules and regulations to prevent or stop such waste. The constitutional authority of the Legislature to pass statutes prohibiting the waste of natural gas and to delegate to the Railroad Commission the power to adopt the necessary administrative orders cannot be questioned. With reference to the Texas statutes, Judge Hutcheson said in J. C. Henderson, Inc. v. Railroad Commission of Texas, 56 F. (2d) 218, (appeal dismissed 278 U. S. 672, 53 S. Ct. 4, 77 L. Ed. 579) at page 221:

> "We are not in doubt that both upon considerations of securing and preserving the correlative rights of persons in property, though owned by them, of the shifting and fugacious kind which oil and gas is, and upon considerations of conserving the natural resources of the state, ample power exists in the Legislature to prevent the wasteful utilization of oil and gas, and to regulate and control their production and use in such reasonable way as to bring about their conservation, and to prevent their dissipation by waste. We therefore reject all of plaintiff's contentions against the statutes founded upon legislative want of power, and address ourselves to a consideration of the question whether the Legislature has clearly and in a reasonable way undertaken to exercise that power. We think it has. We find in the enactment of article 6008, requiring persons discovering gas in order to prevent its waste by escape, to confine it, and providing for inquiry by the commission into the propriety of an authorization, if found, of other uses, neither unreasonable exertion or prohibited delegation of legislative power. * * * *" (Emphasis added)

The Railroad Commission may make reasonable affirmative requirements to carry out the purposes of the conservation statutes, Atlas Pipe Line Co. v. Sterling, 4 F. Supp. 441. Assuming that there is substantial evidence sustaining the conclusion of the Railroad Commission as to the proper method of controlling the well in question, the fact that the operator would be put to considerable expense in complying with the order of the Railroad Commission would not render the order of the Railroad Commission invalid. Ohio Oil Company v. Indiana, 177 U. S. 190, 20 S. Ct. 576, 44 L. Ed. 729.

In answer to your second question, it is our opinion that the Railroad Commission and the State of Texas, in the event the operator of the uncontrolled well fails or refuses to comply with the order of the Railroad Commission, can take legal action by bringing a suit or suits for injunctions, prohibitory and mandatory, for penalties, and for the appointment of a receiver.

Broad powers are conferred by the statutes for the enforcement of the conservation orders of the Railroad Commission. Section 23 of Article 6008 of the Revised Civil Statutes provides as follows:

"Sec. 23. Any person violating any of the provisions of this Article shall be liable to a penalty not to exceed One Thousand Dollars ($1,000) for each offense, and each day's violation shall be a separate offense. Such penalty may be recovered by the State of Texas with the cost of suit in a civil action instituted in Travis County or in the County where the violation occurred by the Attorney General or by the County or District Attorney when joined by the Attorney General of Texas; and any and all violations or threatened violations of this Article may be enjoined by any Court of competent jurisdiction in which the suit for penalty may be brought, and in such cases the Court may issue such writs of injunction, mandatory or prohibitory, as the facts justify."

Article 6013 of the Revised Civil Statutes provides as follows:

"Art. 6013. Petition to restrain waste

"In addition to the penalties provided in this title, it shall be the duty of any district judge, whether in term time or vacation, to hear and determine any petition which may be filed to restrain the waste of natural gas in the violation of this law, and to issue such mandatory or restraining orders as may in his judgment be necessary. Such petition may be filed by any citizen of this State, and the same need allege no further financial interest than the petitioner possesses in common with all citizens of the State in the natural resources thereof."

Mr. John I. Taylor, June 9, 1939, Page 9.

Article 6023 of the Revised Civil Statutes provides as follows:

"Art. 6023.  Jurisdiction

"Power and authority are hereby conferred upon the Railroad Commission of Texas, over all common carrier pipe lines conveying oil or gas in Texas, and over all oil and gas wells in Texas, and over all persons, associations or corporations owning or operating pipe lines in Texas, and over all persons, associations and corporations owning or engaged in drilling or operating oil or gas wells in Texas; and all such persons, associations and corporations and their pipe lines, oil and gas wells are subject to the jurisdiction conferred by law upon the Commission, and the Commission is authorized and empowered to make all necessary rules and regulations for the government and regulation of such persons, associations and corporations and their operations, and the Attorney General shall enforce the provisions of this title by injunction or other adequate remedy and as otherwise provided by law.  The word "Commission," as used in this title, shall mean the Railroad Commission of Texas. The word "Commissioner" shall mean any member of the Railroad Commission."

Article 6024 of the Revised Civil Statutes provides as follows:

"Art. 6024.  Powers

"In all matters pertaining to the discharge of its duties and the enforcement of its powers and authority as provided by the terms of this title, the Commission shall institute suits, hear and determine complaints, require the attendance of witnesses, pay their expenses out of the fund herein created, and sue out such writs and process as may be necessary for the enforcement of its orders, and punish for contempt or disobedience of its orders as the district court may do."

Article 6036 of the Revised Civil Statutes provides as follows:

"Art. 6036.  Penalty

"In addition to being subject to any forfeiture that may be provided for by law and to any penalty that may be imposed by the Commission for contempt for the violation of its rules, regulations, or orders, any person violating any of the provisions of this Act or of Title 102, Revised Civil Statutes

"of Texas, 1925, as amended, or violating any rule, regula-
tion, or order of the Commission promulgated thereunder,
shall be subject to a penalty of not more than One Thousand
Dollars ($1000) for each and every day of such violation,
and for each and every act of such violation, to be recovered
in any Court of competent jurisdiction in Travis County, or
in the county of the residence of the defendant, or, if there
be more than one defendant, in the county of the residence
of any of them, or in the county in which the violation is
alleged to have occurred, such suit by direction of the
Commission to be instituted and conducted in the name of the
State of Texas by the Attorney General or by the county or
district attorney where such suit is brought.  The recovery
or payment of any such penalty shall not authorize the viola-
tion of any provision of this Act, or Title 102, Revised
Civil Statutes of Texas, 1925, as amended, or of any rule,
regulation, or order of the Commission promulgated thereunder.

"Any person aiding or abetting any other person in the
violation of this Act, or of Title 102, Revised Civil Statutes
of Texas, 1925, as amended, or of any rule, regulation, or
order of the Commission promulgated thereunder, shall be sub-
ject to the same penalties as are prescribed herein for
violation thereof by any such other person."

Section 12 of Article 6049e of the Revised Civil Statutes
reads as follows:

"Sec. 12.  Whenever any order, rule or regulation
promulgated by the Commission has been finally adjudged to
be valid, in whole or in part, in any suit to which the
Commission is a party, and thereafter any party to the suit
or other proceedings in which such matter has been so adjudged,
shall violate such rule, regulation, order or judgment, or
shall thereafter suffer any property owned or controlled by
him to be used in violation of any such rule, regulation,
order, or judgment, the Commission shall have the power, and
it shall be its duty to make application to the judge of
the trial court, setting out such rule, regulation, order or
judgment and that such party, subsequent to the date of such
judgment, has violated or is violating such rule, regulation,
order or judgment, and that a receiver be appointed
as provided in this Section.  Thereupon, the judge of such
trial court may, after notice and hearing, appoint a receiver
of the property involved or used in violation of such rule,
regulation, order or judgment, and shall fix a proper bond
for such receiver.  As soon as such receiver has qualified,
he shall take possession of such property, and such receiver
thereafter shall perform his duties as receiver of such
property under the orders of said court, strictly observing

"such rule, regulation, order or judgment. Any party whose property has been so placed in the hands of a receiver may move to dissolve such receivership and to discharge the receiver upon such terms as the court may prescribe."

Section 13 of Article 6049e of the Revised Civil Statutes reads as follows:

"Sec. 13. Whenever it shall appear that any person is violating or threatening to violate any provision of this Act, or of Title 102 of the Revised Civil Statutes of Texas, 1925, as amended, or of any rule, regulation or order of the Commission promulgated thereunder, the Commission, through the Attorney General, shall bring suit in the name of the State of Texas against such person in any Court of competent jurisdiction in Travis County, or in the county of the residence of the defendant or, if there be more than one defendant, in the county of the residence of any of them, or in the county in which such violation is alleged to have occurred, to restrain such person from violating such Statute or such rule, regulation, or order of the Commission, or any part thereof; and in such suit the Commission in the name of the State of Texas may obtain such injunctions, prohibitory and mandatory, including temporary restraining orders and temporary injunctions, as the facts may warrant.

"The violation by any person of any injunction granted under the provisions of this Section shall be sufficient grounds for the appointment by the Court, either upon its own motion or that of the Commission in the name of the State of Texas, of a receiver to take charge of such properties of such person, and to exercise such powers as in the judgment of the Court shall be necessary in order to bring about compliance with such injunction; provided, however, that no such receiver shall be appointed except after notice and hearing. The power to appoint a receiver as herein provided shall be in addition to and cumulative of the power to punish for contempt."

In addition to the conservation statutes quoted above, we direct your attention to certain portions of the statutes relating to corporations. Chapter 6 of Title 32 of the Revised Civil Statutes, Articles 1372 through 1378, inclusive, provides as follows:

Mr. John E. Taylor, June 9, 1939, Page 12.

"Article 1372. Law violations. - Whenever any domestic or foreign corporation in this State shall violate any law of this State, including the law against trusts, monopolies and conspiracies or combinations or contracts in restraint of trade, for the violation of which fines or penalties or forfeitures are provided, all property of such corporation within this State at the time of such violation, or which may thereafter come within this State, shall, by reason of such violation, become liable for such fines or penalties and for costs of suit and costs of collection.

"Art. 1373. Lien, notice. - The State of Texas shall have a lien on all such property from the date that suit shall be instituted by the Attorney General or district or county attorney acting under his direction, in any court of competent jurisdiction within this State, for the purpose of forfeiting the charter or canceling the permit of such corporation, or for such fines or penalties. The institution of such suit for such fine, penalties or forfeiture, shall constitute notice of such lien.

"Art. 1374. Abatement of suit.— Any action or cause of action for any fine, forfeiture or penalty that the State of Texas has, or may have, against any corporation chartered under the laws of this or any other state, territory or nation, shall not abate or become abated by reason of the dissolution of such corporation, whether voluntary or otherwise, or by the forfeiture of its charter or permit.

"Art. 1375. Receiver.— Whenever a corporation, against which the State has instituted suit for forfeiture of its charter or cancellation of its permit or for fines or penalties, shall dissolve in this or any other state, or shall have a judgment rendered against it in this or any other state for the forfeiture of its charter, the court in this State in which such suit is pending shall appoint a receiver for the property and business of such corporation within this State, or that may come or be brought within this State during such receivership; or the court may, in any case wherein the State is suing any such corporation for the forfeiture of its charter, or of its permit to do business in this State, or for fines or penalties, appoint a receiver for such corporation whenever the interest of the State may seem to require such action.

Mr. John K. Taylor, June 9, 1939, Page 13.

"Art. 1576. Rights of State. — The State shall have the right to writs of attachment, garnishment, sequestration or injunction, without bond, to aid in the enforcement of its rights created by this law; and all property not otherwise exempt by law that may come into the possession of any receiver appointed under any provision of this chapter, shall be subject to the lien herein created, and for the payment of any such fine or penalty.

"Art. 1577. Foreclosure. — The Attorney General or any district or county attorney acting under his direction, may bring suit in the name of this State for the foreclosure of such lien. In case the suit for foreclosure is brought against any corporation which has dissolved or had a judgment for the forfeiture of its charter or the cancellation of its permit rendered against it, pending any suit by the State of Texas against such corporation for the forfeiture of its charter or cancellation of its permit or for penalties or fines, service may be had upon any person within this State who acted and was acting as agent of any such corporation in this State at the time of such dissolution or forfeiture of charter or cancellation of permit.

"Art. 1578. Law cumulative. — The rights and remedies given by this law shall be construed as cumulative of all other laws in force in this State, and shall not affect, change or repeal any other remedies or rights now existing in this State for the enforcement, payment or collection of fines, penalties and forfeitures."

The above quoted statutes clearly give the Railroad Commission and the State of Texas, acting through the Attorney General, the power and authority to bring all necessary suits for injunctions, penalties, and the appointment of a receiver. The decisions of the courts of this State have affirmed the power and authority granted by the statutes. Injunctions to prevent the violation of orders of the Railroad Commission have been sustained, where the suits were brought by the State and the Railroad Commission, acting through the Attorney General. Acme Refining Co. v. State, 86 S. W. (2d) 507. Compare Foshee Refining Co., Inc., v. State, 73 S.W. (2d) 1098. A temporary injunction may be issued on the verified petition of the State and the Railroad Commission, without notice to the defendants. Tyreco Refining Co., Inc., v. State, 81 S.W. (2d) 291 (writ of error dismissed). Persons violating such injunctions may be punished for contempt of court. Ex parte Duncan, 127 Tex. 507, 95 S.W. (2d) 675.

We have not found any Texas cases relating to orders of the Railroad Commission of Texas where mandatory injunctions have been granted. However, the power to grant mandatory injunctions is expressly granted by the statutes quoted above. Mandatory injunctions are a recognized form of relief for the abatement of public nuisances. Llano County v. City of Llano, 28 S.W. 926; compare Bartholomew v. Shipe, 251 S.W. 1031. The waste of natural gas in violation of a statute forbidding such waste is a public nuisance and the court, upon the suit of the State may grant both prohibitory and mandatory injunctive relief. State v. Ohio Oil Co., 150 Ind. 21, 49 N.E. 809, 50 N.E. 1125; affirmed, Ohio Oil Company v. Indiana, 177 U. S. 190, 20 S. Ct. 576, 44 L. Ed. 729.

The penalty provisions of the conservation laws have been held to be valid and have been enforced by judgments in a number of cases. Culver v. Smith, 74 S.W. (2d) 754 (writ of error refused); Flannery v. State, 85 S.W. (2d) 1052 (writ of error refused); Roco Refining Co. v. State, 94 S.W. (2d) 1214; Fleishman v. State, 91 S.W. (2d) 493. Compare Johnson Refinery v. State, 85 S.W. (2d) 948; F. C. Henderson, Inc., v. Railroad Commission, 56 F. (2d) 218.

Upon suit by the State of Texas, joined by the Railroad Commission, in which it is alleged that the defendant is violating orders of the Railroad Commission, it has been held proper for the court to appoint a receiver by interlocutory order upon the filing of the petition and before the issuance of notice to the defendant. Patton v. State, 62 S. W. (2d) 381. Compare Ortiz Oil Co. v. Railroad Commission, 62 S. W. (2d) 376; Crossman v. State, 65 S.W. (2d) 580; Wrather v. State, 85 S. W. (2d) 585.

Under the statutes and decisions referred to, it is our opinion that, in the situation supposed by your second question, the Railroad Commission, when joined by the State of Texas, may maintain a suit or suits in which it may obtain either prohibitory or mandatory injunctions, or both, judgment for penalties, and the appointment of a receiver.

Very truly yours,

ATTORNEY GENERAL OF TEXAS

By James P. Hart

James P. Hart
ASSISTANT

JPH:AMM

APPROVED:

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY